## JOY FLORAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8986.   Promulgated July 29, 1927.

1. The expiration of the statutory time within which taxes may be determined, assessed and collected bars the remedy but, in the absence of statutory provision to the contrary, does not bar the liability.

2. In 1924, the Commissioner and the petitioner executed a consent in writing to extend for one year the period within which taxes for the fiscal year ended July 31, 1919, might be determined. At the time such consent was executed, the statute had run on any assessment of tax. *Held*, that the tax might be assessed within the period provided for in such consent. *Held*, further, that such consent is not void for want of consideration.

3. Section 1106 of the Revenue Act of 1926 is not retrospective.

4. The Government is not barred in the enforcement of its claims by any period of limitations unless the claim clearly falls within the limitation.

5. Where no assessment of the tax was made before the enactment of the Revenue Act of 1924 and the period within which assessment might be made had not then expired, the tax may be collected within six years after assessment.

6. Premiums paid by a corporation upon insurance on the lives of its officers, such insurance being assigned as security for a loan, are not deductible in computing net income under the Revenue Acts of 1918 and 1921. Section 215 of such acts followed.

*Harry Friedman, Esq.,* for the petitioner.
*Jos. K. Moyer, Esq.,* for the respondent.

This proceeding involves the determination by the Commissioner of deficiencies in income and profits taxes of $1,979.86, $1,745.46, and $298.54 for the respective fiscal years ended July 31, 1919, July 31, 1920, and July 31, 1921. As to 1919 it is alleged that assessment and collection of the tax are barred by limitation. As to 1920 and 1921 it is alleged that error was committed in refusing to allow as a deduction premiums paid on life insurance policies on the lives of officers of the petitioner.

### FINDINGS OF FACT.

Petitioner is a corporation engaged in business as a florist with its principal office at Nashville, Tenn. Notice of the deficiency, from which this appeal is taken, was mailed to the petitioner on September 11, 1925.

On or about November 1, 1924, there was mailed to the petitioner from the office of the Commissioner of Internal Revenue a letter reading as follows:

IT : CA : 2339-9

TREASURY DEPARTMENT,
OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
Washington, November 1, 1924.

JOY FLORAL COMPANY,
Nashville, Tennessee.

SIRS: Receipt is acknowledged of your brief signed and sworn to under date of July 18, 1924, in which protest is made against the additional taxes of $1,752.48 and $298.54 for the years 1920 and 1921, respectively, as indicated in office letter dated August 28, 1924.

A deficiency of $1,979.86 for the year 1919 was indicated in the above-mentioned office letter and as no protest against this amount is included in your brief it is assumed that the deficiency is agreed to.

You are therefore requested to execute and return to this office within fifteen days from the date of this letter the enclosed agreement form or present exceptions, if any, which you may take thereto.

If you protest against the determination of the deficiency the Bureau desires to proceed in the regular manner to the consideration of any information submitted by you. However, the statutory period within which the Commissioner may assess additional taxes for the year 1919 will expire presently, and in order to avoid the necessity of making an assessment prior to such consideration, it is requested that you sign and return to this office the enclosed form of waiver.

In your reply reference should be made to IT: CA: 2332-9.

Respectfully,

J. G. BRIGHT,
Deputy Commissioner.
(Signed)          OLIVER KINSEL,
Assistant Head of Division.

Thereafter and on or about December 2, 1924, the petitioner duly executed an instrument in writing, which was thereafter executed by the respondent, and which reads:

DEC. 2, 1924.

INCOME AND PROFITS TAX WAIVER.

In pursuance of the provisions of existing Internal Revenue Laws, Joy Floral Co., a taxpayer, of Nashville, Tenn., and the Commissioner of Internal Revenue, hereby consent to extend the period prescribed by law for a determination, assessment, and collection of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year July 31, 1919, under the Revenue Act of 1924, or under prior income, excess-profits, or war-profits tax Acts, or under Section 38 of the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes", approved August 5, 1909. This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation within which assessments of taxes may be made for the year or years mentioned, or the statutory period of limitation as extended by Section 277(b) of the Revenue Act of 1924, or by any waivers already on file with the Bureau.

JOY FLORAL Co., Taxpayer.
By (Signed)          J. M. JOY, Pres.
D. H. BLAIR, Commissioner.

Thereafter, under date of July 15, 1925, there was mailed to the petitioner from the office of the respondent a letter reading:

IT: E: SM                          TREASURY DEPARTMENT,
MN: B-20014          OFFICE OF COMMISSIONER OF INTERNAL REVENUE,
                                   *Washington, July 15, 1925.*

JOY FLORAL COMPANY,
     *Sixth and Church Sts.,*
          *Nashville, Tennessee.*

SIRS: An audit of your income and profits tax returns for the years 1919 to 1921, inclusive, has resulted in the determination of a deficiency in tax of $4030.88, as shown by Bureau letter dated August 28, 1924.

You are granted 30 days from the date of this letter within which to present a protest, supported by additional evidence or brief, against this determination of a deficiency. Any additional evidence submitted should be under oath. Upon request submitted within the period mentioned, you will also be granted a hearing in the Bureau with reference to the matter.

A request for a hearing should contain (a) the name and address of the taxpayer; (b) in the case of a corporation, the name of the State of incorporation; (c) a designation by date and symbol of the notice or notices with respect to which the hearing is desired; (d) a designation of the year or years involved and a statement of the amount of tax in dispute for each year; (e) an itemized schedule of the findings of the Unit to which the taxpayer takes exception; and (f) a summary statement of the grounds upon which the taxpayer relies in connection with each exception.

If, after consideration of any additional evidence submitted and any arguments advanced by you, a deficiency is finally determined by the Bureau to be due from you, you will, in accordance with the provisions of Section 274 of the Revenue Act of 1924, be advised by registered mail of the final determination of the Commissioner as to the amount of the deficiency, and allowed 60 days from the mailing of the letter in which to file an appeal to the United States Board of Tax Appeals in the event you do not acquiesce in such final determination.

If you acquiesce in the determination of a deficiency as disclosed in this letter and the accompanying statements, you are requested to sign the inclosed agreement consenting to the assessment of such deficiency, and forward it to the Commissioner of Internal Revenue, Washington, D. C., for the attention of IT: E: SM: MN-B-20014. In the event that you acquiesce in a part of the determination, the agreement should be executed with respect to the items agreed to.

          Respectfully,

                              (Signed)          C. B. ALLEN,
                                   *Acting Deputy Commissioner.*

Thereafter and on or about July 27, 1925, the petitioner duly executed an instrument in writing, which was thereafter executed by the respondent, reading:

          INCOME AND PROFITS TAX WAIVER FOR TAXABLE YEARS ENDED PRIOR TO
                              JANUARY 1, 1922.

IT: E: SM: MN-B-20014-5

                                                       7/27/25

In pursuance of the provisions of existing Internal Revenue Laws Joy Floral Co., a taxpayer of Nashville, Tenn., and the Commissioner of Internal

Revenue hereby. waive the time prescribed by law for making any assessment of the amount of income, excess-profits, or war-profits taxes due under any return made by or on behalf of said taxpayer for the year (or years) Fiscal year ended 7/31/19, under existing revenue acts, or under prior revenue acts.

This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date and (1) no appeal is filed therefrom with the United States Board of Tax Appeals then said date shall be extended sixty days, or (2) if an appeal is filed with said Board then said date shall be extended by the number of days between the date of mailing of said notice of deficiency and the date of final decision by said Board.

JOY FLORAL CO.,
*Taxpayer.*

By (Signed)　　　J. M. JOY, *Pres.*
　　　　　　　　　D. H. BLAIR,
　　　　　　　　　　　*Commissioner*

Each of such instruments described as "income and profits tax waiver" were executed more than five years after the date the return was filed for the fiscal year ended July 31, 1919.

In July, 1920, petitioner borrowed $65,000 from the Life & Casualty Insurance Co., and executed to that company a mortgage upon its plant and green houses as security for the payment of such loan. As additional security the insurance company required that insurance be taken upon the lives of the officers of the petitioner. Endowment policies maturing in ten years, in the respective amounts of $25,000 and $50,000, were issued by the insurance company upon the lives of two officers of the petitioner. Such policies were payable to the petitioner and were assigned by it to the insurance company as security. On July 13, 1920, the petitioner paid $4,156.25 as premiums upon said policies and on July 1, 1921, it paid $3,753.50 as premiums upon said policies. The loans were repaid to the insurance company in 1923 or 1924 and no further payments of premiums were thereafter made.

OPINION.

PHILLIPS: The first contention of the petitioner is that the consents or waivers filed in 1924 and 1925 are invalid for the reason that they were filed after the period within which the Commissioner could make assessments for the year 1919 had expired and were without consideration.

The Revenue Act of 1918, under which the taxes for 1919 became due, provided that except in the case of false or fraudulent returns with intent to evade tax, the amount of the tax due should be determined and assessed within five years after the return was due or was made, and no suit or proceeding for the collection of any tax should be begun after the expiration of five years from such dates. The

Revenue Act of 1921 contained a similar provision, adding: "unless both the Commisioner and the taxpayer consent in writing to a later determination, assessment, and collection of the tax." The Revenue Act of 1924 provided that such taxes should be assessed within five years with the further provision that—

SEC. 278. (c) Where both the Commissioner and the taxpayer have con-sented in writing to the assessment of the tax after the time prescribed in sec-tion 277 for its assessment the tax may be assessed at any time, prior to the expiration of the period agreed upon.

There can be no question that at the time the consents were executed, the time within which the tax might have been assessed or collected had expired. Counsel for the petitioner argues: (1) Such expiration of the statute of limitations operated to extinguish the liability of the petitioner; (2) a waiver can not create a right to impose a tax already barred by the law creating the tax; and (3) there was no consideration for the waivers.

In *Campbell* v. *Holt*, 115 U. S. 620, the Supreme Court had before it substantially similar questions with respect to indebtedness be-tween individuals. In that case, after the statute of limitations had expired on the debt in question, a new constitution was adopted by the State of Texas, setting up a different statute of limitations in civil suits. The defendants insisted that the bar of the statute, being complete and perfect, could not be taken way. In its opinion the court said:

The action is based on contract. It is for hire of the negroes used by the father, and for the money received for the land of his daughter, sold by him. The allegation is of indebtedness on this account, and the plea is that the action is barred by the statute of limitations. It is not a suit to recover possession of real or personal property, but to recover for the violation of an implied contract to pay money. The distinction is clear, and in the view we take of the case, important.

By the long and undisturbed possession of tangible property, real or personal, one may acquire a title to it, or ownership, superior in law to that of another, who may be able to prove an antecedent and, at one time, paramount title. This superior or antecedent title has been lost by the laches of the person holding it, in failing within a reasonable time to assert it effectively; as, by resuming the possession to which he was entitled, or asserting his right by suit in the proper court. What the primary owner has lost by his laches, the other party has gained by continued possession, without question of his right. This is the foundation of the doctrine of *prescription*, a doctrine which, in the English law, is mainly applied to incorporeal hereditaments, but which, in the Roman law, and the codes founded on it, is applied to property of all kinds.

Mr. Angell, in his work on Limitations of Actions, says that the word limita-tion is used in reference to "the time which is prescribed by the authority of the law (*auctoritate legis*, 1 Co. Litt. 113) during which a title may be acquired to property by virtue of a simple adverse possession and enjoyment, or the time at the end of which no action at law or suit in equity can be maintained;" and in the Roman law it is called *Proescriptio*.

"Prescription, therefore (he says), is of two kinds—that is, it is either an instrument for the acquisition of property, or an instrument of an exemption only from the servitude of judicial process." Angell on Limitations, §§ 1, 2.

     *       *       *       *       *       *       *

It may, therefore, very well be held that, in an action to recover real or personal property, where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real ownership had become vested in him, and to give the act the effect of transferring this title to plaintiff, would be to deprive him of his property without due process of law.

But we are of opinion that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on very different ground.

A case aptly illustrating this difference in the effect of the statute of limitations is found in *Smart* v. *Baugh*, 3 J. J. Marsh. 364, in which the opinion was delivered by Chief Justice Robertson, whose reputation as a jurist entitles his views to the highest consideration. The action was detinue for a slave, and the defendant having proved his undisturbed possession of the slave for a period of time which would bar the action, but having failed to plead the statute of limitations, the question was whether he could avail himself of the lapse of time. "The plea (said the court) is *non detinet* in the present tense, and under this plea anything which will show a better right in the defendant than in the plaintiff may be admitted as competent evidence. The plea puts in issue the plaintiff's right. Five years uninterrupted adverse possession of a slave not only bars the remedy of the claimant out of possession, but vests the absolute legal right in the possessor. Therefore, proof of such possession may show that the claimant has no right to the slave and cannot recover. Consequently it would seem to result, from the reason of the case, that the adverse possession may be proved under the general issue." Answering the objection that in assumpsit and other actions the statute to be available must be pleaded, and by analogy should be pleaded in that case, he says: "The same reason does not apply to assumpsit, because the statute of limitations does not destroy the right *in foro conscientioe* to the benefit of assumpsit, but only bars the remedy if the defendant chooses to rely on the bar. *Time does not pay the debt, but time may vest the right of property.*" Again he says: "This is perfectly true in detinue for a slave, because, in such a case, the lapse of time has divested the plaintiff of his right of property, and vested it in the defendant . . . But it is not so in debt, because the statute of limitations does not destroy nor pay the debt." "This (he says) has been abundantly established by authority . . . A debt barred by time is a sufficient consideration for a new assumpsit. The statute of limitations only disqualifies the plaintiff to recover a debt by suit if the defendant rely on time in his plea. It is a personal privilege, accorded by law for reasons of public expediency; and the privilege can only be asserted by plea."

The distinction between the effect of statutes of limitation in vesting rights to real and personal property, and its operation as a defence to contracts, is well stated in *Jones* v. *Jones*, 18 Ala. 248. See also Langdoll's Equity Pleading, §§ 118 et seq.

We are aware that there are to be found, in the opinions of courts of the States of the Union, expressions of the idea that the lapse of time required to bar the action extinguishes the right, and that this is the principle on which the statutes of limitation of actions rest.

But it will be found that many of these are in cases where the suits are for the recovery of specific real or personal property, and where the proposition was true, because the right of the plaintiff in the property was extinguished and had become vested in the defendant. In others, the Constitution of the State forbade retrospective legislation. That the proposition is sound, that, in regard to debt or assumpsit on contract, the remedy alone is gone and not the obligation, is obvious from a class of cases which have never been disputed.

1. It is uniformly conceded, that the debt is a sufficient consideration for a new promise to pay, made after the bar has become perfect.

2. It has been held, in all the English courts, that, though the right of action may be barred in the country where the defendant resides or has resided, and where the contract was made, so that the bar in that jurisdiction is complete, it is no defence, if he can be found, to a suit in another country.

*        *        *        *        *        *        *

We understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments. But when we get beyond this, although vested rights may exist, they are better described by some more exact term, as the phrase itself is not one found in the language of the Constitution.

We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. * * * No man promises to pay money with any view to being released from that obligation by lapse of time. It violates no right of his, therefore, when the legislature says, time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost.

There is, of course, a substantial difference between an obligation created by contract and one imposed by statute. Nevertheless, we believe this decision has an application to the case before us as laying down the principle to be that, generally, the statute of limitations in the Federal courts affects the remedy but does not discharge the obligation.

There are other decisions of the Supreme Court to the effect that where a statute creates a new liability which did not theretofore exist and also limits the time within which it can be enforced, the time limitation goes to the right created, and not to the remedy. In those cases it was held that the time of limitation was a condition to the liability created. *The Harrisburg*, 119 U. S. 199; *Davis* v. *Mills*, 194 U. S. 451.

Here we have a different situation. The power to impose taxes and the right to collect them is inherent in the Government. In the absence of any statute of limitations there is the right to collect such taxes at any time. Is a proper construction of the statute that the limitation upon assessment and collection by a suit or other proceeding is a condition to the liability; that a tax is imposed only if a suit or proceeding is begun within a certain period, and not otherwise? Or is it more reasonable to construe the statute as imposing a

tax in any event, with a limitation upon assessment and collection by a suit or a proceeding after a specified time? It seems to us that there can be no reasonable doubt that the imposition of the tax is uncon-ditional; that the provision that the tax may not be assessed or collected by suit or proceeding after a specified time is one of repose, and that despite the fact that assessment may not be made or collection enforced, the tax liability has not been discharged, in the absence of statutory provision such as is contained in the Revenue Act of 1926. See *In re Glover-McConnell Co.*, 9 Fed. (2d) 683; 5 Am. Fed. Tax Rep. 5759.

This conclusion is not in conflict with the decision of the Supreme Court in *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346; 6 Am. Fed. Tax Rep. 6541. There the collector, after the statute had run on collection of the tax, distrained and sold property of the respondent to pay the amount claimed. The payment was exacted under distraint at a time when no power to distrain existed. The action of the collector was illegal and the respondent was allowed to recover the amount illegally exacted. The court said in that case:

A reasonable view of the matter is that it was the intention of Congress by the clause here in question to protect taxpayers against any proceeding whatsoever for the collection of tax claims not made and pressed within five years.

There is nothing in that decision from which any inference can be drawn that the expiration of the statute discharged the liability or that the statute might not have been waived had the taxpayer desired so to do.

Section 1106 (a) of the Revenue Act of 1926, cited by the petitioner, is not retrospective and in our opinion has no application unless the bar of the statute of limitations was in effect when the act was passed or has arisen subsequently.

We conclude that the tax liability had not been extinguished at the time petitioner executed the consents here in question, although at the time the first was executed the period within which collection could have been enforced had expired, and any collection by a suit or other proceeding would have been illegal and subject to a suit to recover the amount collected.

In this situation the Commissioner and the petitioner entered into a consent-in writing that the tax might be assessed and collected at a later date. The execution of such a consent is expressly authorized by statute as a method of extending the period within which taxes may be determined, assessed and collected. Reaching the conclusion which we do with respect to the character and effect of the statutory limitation and considering that the consents in question are not waivers of the statute but were entered into pursuant to its express

terms for the purpose of extending the time within which taxes might be assessed and collected, we have no doubt that they were effective for that purpose.

It is claimed that these consents are invalid for lack of consideration. In the case of debts, the original indebtedness or contract is sufficient consideration for a new promise to pay. But here it is urged that we have no debt, no liquidated liability, no admission of any liability and no old contract, the original consideration for which can carry through as consideration for a new promise or other agreement and we are asked to find that the consent here in question is void for want of consideration.

Coincident with the benefits of citizenship is the duty to support the Government, by taxes and otherwise. See *Cook* v. *Tait*, 265 U. S. 47. The right to do business in the United States as a corporation carries with it the obligation to pay the taxes imposed. This obligation is of at least as high a character as the duty to pay a debt, and the benefits flowing to the taxpayer, whether individual citizen or corporation, are, we believe, sufficient to support such a consent with respect to taxes as we have before us, if consideration be necessary.

There is another ground upon which the petitioner's contention must be rejected. It is well settled law that no period of limitations will bar a claim of the Government unless the limitation is expressly authorized and the claim falls within it. The Revenue Act of 1924, with which we are principally concerned here, authorized an assessment at any time prior to the expiration of a period agreed upon in writing between the Commissioner and the taxpayer. It would seem, therefore, that the petitioner, although at one time within the statutory bar, is now unable to bring itself within its limits. That the consent to the assessment was executed without consideration seems immaterial, since the Government is not in the position of attempting to set up the agreement to establish the liability or to avoid the statute, but is in the more fortunate position of showing that the period provided by statute in which it may assert its claims has not expired.

It is argued by the petitioner that the statute had run on collection when the 1926 Act became effective, even though the waivers filed were valid. Counsel points out that the second waiver, dated July 27, 1925, related only to assessment of the tax and did not extend the time for collections. Such waiver was filed during the period when the Revenue Act of 1924 was in effect. The portions of that Act which are material here provided:

SEC. 277. (a) Except as provided in section 278 and in subdivision (b) of section 274 and in subdivision (b) of section 279—

\*          \*          \*          \*          \*          \*          \*

(2) The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court for the collection of such taxes shall be begun after the expiration of such period.

SEC. 278. (c) Where both the Commissioner and the taxpayer have consented in writing to the assessment of the tax after the time prescribed in section 277 for its assessment the tax may be assessed at any time prior to the expiration of the period agreed upon.

(d) Where the assessment of the tax is made within the period prescribed in section 277 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made.

That Act provided a period of six years after assessment for collection. The period in which assessment might have been made not having expired when the Revenue Act of 1926 became effective, collection was not barred and the case does not fall within section 278(e) of the latter Act.

There remains for consideration the contention that the first waiver was obtained by misrepresentation, the letter sent from the respondent's office stating that the statute would presently expire, when in fact it had already expired. Whether or not this contention is well founded seems immaterial, since a second waiver was subsequently filed and it is not argued that such waiver was obtained under any misrepresentation. We conclude, therefore, that assessment and collection of the tax is not barred.

With respect to the years 1920 and 1921, the petitioner alleges that the Commissioner committed error in refusing to allow it to deduct as ordinary and necessary expense of its business amounts paid as premiums upon insurance taken out on the lives of its officers, which insurance was assigned as security to the insurance company from which it had secured a loan. It contends that such premiums were a part of the cost to it of securing a loan and deductible under section 234(a)(1) of the Revenue Acts of 1918 and 1921 providing for the deduction of " all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." Section 215 of each of these acts provides that no deduction shall be allowed for:

Premiums paid on any life insurance policy covering the life of any officer or employee, or of any person financially interested in any trade or business carried on by the taxpayer, when the taxpayer is directly or indirectly a beneficiary under such policy.

Counsel for the petitioner cites those decisions of the courts which hold that doubts in the taxing statute must be resolved in favor of the petitioner. There is an equally well defined rule of construction laid down by the courts to the effect that a general provision of the law must give way before a specific provision. In our opinion the situation presented is not a case of a doubt in the construction of the taxing statute but rather a specific provision in section 215 limiting the application of section 214.

Although the policies were assigned to the creditor as security for the payment of the loan, there would seem to be no reasonable doubt that the petitioner was the beneficiary under such policies, for, whether the proceeds were paid to it or were paid to the creditor in the discharge of its indebtedness, it was the beneficiary to the extent of any payment becoming due. The insurance company was not substituted as beneficiary under the policy, there being only an assignment to it of the proceeds as collateral to the loan and we are satisfied that both in legal contemplation and in fact the petitioner was the beneficiary of such policy. The provision of the law denying the deduction of a premium paid on a policy covering the life of an officer or employee, where the corporation is the beneficiary, contains no exception permitting the deduction in any circumstance. We are of the opinion that the determination of the Commissioner is in accord with the provisions of the law.

It might be pointed out that if we are in error in this conclusion and the petitioner is entitled to deduct so much of the payment as constitutes an ordinary and necessary expense, it would appear that a substantial part of each annual payment goes to build up a surrender value and to that extent constitutes the acquisition of a capital asset. This would be especially true in case of premiums paid under an endowment policy maturing in ten years. Without any evidence before us we could not determine how much of the premium represents the purchase of a capital asset in the nature of a surrender value and how much represents insurance for the year which would not be returned, but considering that annual premiums must build up a policy reserve within ten years equal to the face value of the policy, it can be assumed that a substantial amount of each annual payment became a portion of the reserve which might have been recovered at any time by surrendering the policy.

Reviewed by the Board.

*Decision will be entered for the respondent.*

STERNHAGEN concurs in the result.