Chicago Railway Equipment Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 3964.    Promulgated September 24, 1928.

*William S. Oppenheimer, Esq.,* and *Henry W. Price, Esq.,* for the petitioner.

*L. C. Mitchell, Esq.,* for the respondent.

478

OPINION.

SMITH: Some of the issues originally raised by the petitioner have been settled by the decision of the Board reported in 4 B. T. A. 452, and by the decision of the United States Circuit Court of Appeals for the Seventh Circuit in *Chicago Railway Equipment Co.* v. *Blair*, 20 Fed. (2d) 10; Am. Fed. Tax. Rep. 6817. The order of the Board entered November 4, 1926, and amended November 10, 1926, was reversed by the Circuit Court of Appeals and remanded to this Board " with direction to take further evidence, if necessary, on any question, and to fix the market value as of March 1, 1913, and further, to base the depreciation thereon in accordance herewith, and to allow the charge-off of bad accounts for the year 1918." One of the questions originally raised was the proper allowances for depreciation deductible from gross income in the petitioner's tax returns for 1917, 1918, and 1919. The rates at which depreciation should be computed have been settled. No question has been raised as to the correctness of the respondent's determination of net additions to depreciable properties for the period subsequent to March 1, 1913. The only issues before the Board relating to depreciation are (1) the March 1, 1913, value of depreciable properties of the petitioner, and (2) the proper segregation of depreciable assets into (a) power and (b) machinery and equipment. By a supplemental petition, allowed to be filed by the Board in an order entered January 6, 1928, the petitioner alleges that the assessment and collection of any deficiencies for the years 1917, 1918, and 1919 are barred by statutes of limitation.

The Board assumes that under the mandate of the Circuit Court of Appeals it has jurisdiction to consider the question raised in the supplemental petition. In Foster on Federal Practice, vol. 4, 6th Ed., sec. 712, it is stated:

* * * Where a decree is reversed with a procedendo or directions that further proceedings be had in a conformity with, or not inconsistent with the opinion of the appellate court, or a new trial is ordered; the court of first instance has plenary authority to allow amendments, consolidation with another case, and further proof, except in so far as the opinion or mandate specifically forbids. Although the mandate contains no direction for a new trial, it seems that a new trial may be ordered when there is a provision for a procedendo. The mandate must be interpreted according to its subject-matter,

and the decree of the court below as well as that of the appellate court may be taken into consideration in the interpretation thereof. (Numerous cases cited.)

In *Rio Grande Dam & Irrigation Co.* v. *United States*, 215 U. S. 266, it was held that, where a case is opened, further evidence may be produced, it is also open for the amendment of the original pleadings or for additional pleadings appropriate to the issues; and permission by the lower court to file such supplemental complaint is not inconsistent with the mandate of the Supreme Court remanding the case with directions to grant leave to both sides to adduce further evidence. In *Hawkins* v. *Cleveland, C., C. & St. L. Ry. Co.* (C. C. A. 7th Cir.), 99 Fed. 322, 324, it was held:

\* \* \* In the present case the decree below was reversed, but, instead of a direction for the entry of any particular decree, the mandate was, as stated, that further proceedings should be had, not inconsistent with the opinion of this court. The effect was to put the case in the same posture as if no decree had ever been entered, and in that situation the court had the same authority to permit an amendment of the petition or bill of the appellee for the purpose of enlarging the issue and of admitting further proofs as it had before the entry of the reversed decree. The case of In re *Sanford Fork & Tool Co.*, 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414, affords an apt precedent.

Counsel for the appellant have urged that in this instance it would be inequitable to permit a change in the issues, but in the first instance, at least, that is a question for the circuit court. \* \* \*

1. The main issue relates to the March 1, 1913, value of petitioner's depreciable properties. The exact amounts as of December 31, 1916, on which depreciation was allowed by the respondent have been set forth in the findings of fact and total $1,384,034.11. Between March 1, 1913, and December 31, 1916, additions had been made to the petitioner's depreciable properties in the net amount of $254,159.71. This amount subtracted from the respondent's value on December 31, 1916, leaves $1,129,884.40 as the respondent's basic value of depreciable assets on March 1, 1913. The book value of the depreciable assets of the petitioner on December 31, 1912, less the reserve for depreciation chargeable against such book value, was $1,197,761.30. It will thus be seen that the petitioner's book values at March 1, 1913, and the values used by the respondent as a basis for the computation of allowable depreciation for the taxable years were approximately the same. In the former opinion of the Board, 4 B. T. A. 452, it was stated that the Commissioner:

\* \* \* Computed the allowance for exhaustion, wear and tear of the buildings, machinery and equipment upon the basis of undepreciated cost on March 1, 1913, plus the cost of additions since that time, as representing, in the absence of better evidence, the fair market price, or values on March 1, 1913. \* \* \*

The basis for this statement was the deficiency notice sent to the petitioner advising it of deficiencies for the years 1917, 1918, and

1919. Upon the second hearing of this case evidence was adduced to show that the March 1, 1913, values used by the respondent were greatly in excess of the cost of the depreciable properties to the petitioner. The petitioner's plants had been appraised at sundry times prior to March 1, 1913, and the book values theretofore carried at cost had been stepped up to accord with the appraisals. The book values of the petitioner's plants located at Grand Rapids and Detroit, Mich., Marion, Ind., and Jersey City, N. J., were stepped up at the close of 1908 to the extent of $185,797.83 to accord with appraisals of properties which had been made. The petitioner's auditor admitted that these increases in book values increased the book value over cost to the amount stated. An appraisal was made of the Franklin plant in 1912, shortly after its acquisition, and the book value was increased over cost to accord with the appraisal to the extent of $148,244.09. The record shows that the costs of petitioner's plants were accurately reflected by the petitioner's books of account except where they had been increased as a result of appraisals. Depreciation had been charged off in amounts approved by the company's auditors.

The petitioner contends that the March 1, 1913, value of its depreciable assets was $1,536,323 and that they were classified as follows:

Franklin, Pennsylvania Plant:

| | |
|---|---:|
| Buildings | $78,489.00 |
| Power Plant | 41,920.00 |
| Machinery and Equipment | 251,956.00 |
| Total | $372,365.00 |

Marion, Indiana Plant:

| | |
|---|---:|
| Buildings | $154,481.00 |
| Power Plant | 3,225.00 |
| Machinery and Equipment | 142,404.00 |
| Total | $300,110.00 |

Grand Rapids, Michigan Plant:

| | |
|---|---:|
| Buildings | $139,236.00 |
| Power Plant | 16,448.00 |
| Machinery and Equipment | 170,866.00 |
| Total | $326,550.00 |

Chicago Plant:

| | |
|---|---:|
| Buildings | $217,364.00 |
| Power Plant | 15,916.00 |
| Machinery and Equipment | 147,833.00 |
| Total | $381,113.00 |

Detroit, Michigan Plant:

| | |
|---|---:|
| Buildings | $49,937.00 |
| Power Plant | 9,857.00 |
| Machinery and Equipment | 96,391.00 |
| Total | $156,185.00 |

This amount is exclusive of patterns and automobiles. These are the values claimed by the president of the petitioner to represent the fair market values.

Although based upon the Coats & Burchard Co. appraisals as of 1915 and 1916, the amounts claimed by the petitioner as the fair market values of depreciable assets on March 1, 1913, are in excess of the estimated cost of reproducing the properties new on March 1, 1913, allowance being made for net additions to depreciable assets during the years 1913, 1914, and 1915. As shown by the findings of fact the cost of reproducing the properties new on December 31, 1912 (based on the Coats & Burchard Co. appraisals) was $1,526,025.06, whereas the petitioner's officers claim that those values were $1,536,323.

That the Coats & Burchard Co. appraisals represent not the fair market values of the petitioner's depreciable assets at the dates of the appraisals but the estimated cost of reproducing the properties in a new condition on those dates, is conclusively proven by the testimony of the petitioner's auditor Forward. Upon the first hearing of this case he was asked:

Q. Is it a fact that the reproductive values which they [Coats & Burchard Co.] found make allowance for depreciation?

A. No, sir; the depreciated values are stated separately.

Q. Have you testified heretofore as to the depreciated values which that company found?

A. I gave yesterday—well, to answer your question directly, no, sir.

Q. All the testimony you have given heretofore relates to retroactive [reproductive] values?

A. Yes, sir; and I gave my own opinion of all of what the depreciation was on those plants on March 1, 1913.

It appears from other testimony of the witness Forward that Coats & Burchard Co. prepared in connection with their reproductive appraisals depreciation schedules which might, if they had been offered in evidence, have afforded a satisfactory basis for determining the fair market values on March 1, 1913. The auditor admitted that such depreciation schedules had been prepared by the Coats & Burchard Co. He testified at the first hearing that he had left the depreciation schedules prepared by the Coats & Burchard Co. "over at the hotel." They have never been offered in evidence. It thus appears that the Coats & Burchard Co. appraisals offered in evidence are incomplete. The portions offered do not purport to give fair market values of assets in their then condition at the dates of the appraisals. Forward estimated that the depreciation which had accrued on brick buildings on March 1, 1913, was, in round numbers, $41,000; on iron and steel buildings, $2,000; on power $11,000; and on equipment $77,000. Nevertheless, in making their estimates of

fair market values at the basic date, the petitioner's witnesses took no account of depreciation which had accrued upon the assets.

Manifestly, the great bulk of the petitioner's assets on hand on March 1, 1913, had suffered depreciation. Some of them had been owned for many years and the depreciation claimed to have been sustained upon them during the taxable years runs to large figures. In the light of the fact that depreciation has not been taken into account by the petitioner's witnesses in determining the fair market value on March 1, 1913, we can not accept the petitioner's estimates of value as reflecting the fair market value. The Coats & Burchard Co. appraisals do not support the contentions of the petitioner.

In the second hearing of this case the evidence as to actual market values on March 1, 1913, covered a broader field and was much more complete than the evidence offered at the first hearing. The Board, at this time, in addition to the reproductive appraisals and the general endorsement thereof by corporate officers, now has before it evidence of earnings before and after 1913, of the prices at which shares of stock were sold for a period of years prior to 1916, of reproductive appraisals in existence in 1913, and of a sale of a portion of a plant in 1912. This additional evidence, as shown by the findings of fact, supports the substantial correctness of the determinations of values of the petitioner's assets made by the respondent at the basic date, March 1, 1913.

The book value of depreciable assets at December 31, 1912, was $1,197,761.30. The fair market value used by the respondent for such assets on March 1, 1913, was $1,129,884.40, or a difference of only $67,876.90. Taking into consideration depreciation from January 1 to February 28, 1913, inclusive, and changes in assets owned during the period, we find from the evidence that the total of the values used by the respondent as the March 1, 1913, value was not understated. They are therefore sustained. The total value has been segregated into classes of depreciable property in our findings of fact as warranted by the evidence.

2. The second question in issue relating to depreciation is the correct allocation between (a) power and (b) machinery and equipment of the March 1, 1913, values. The witness Forward claims that only machines generating power such as boilers, engines, pumps, etc., should be classified as power. He testified that the March 1, 1913, value of the power plant was $87,366.59, and of machinery and tools $811,040.84. At the second hearing of this case he picked out from the Coats & Burchard Co. appraisals of 1915 and 1916 items in the machinery account, totaling $105,752.42 which he regarded as properly belonging to the power plant. All of the balance of the depreciable assets other than buildings, patterns and automobiles he classified as machinery and equipment subject to a 10 per cent de-

preciation rate. It is the contention of the respondent that not only the machines generating the power, but also that the apparatus or equipment for the transmission of power should also be classed as power and depreciated at a 5 per cent rate.

The Coats & Burchard Co. appraisals made in 1915 and 1916 show no classification of assets under power. The classifications used are in great detail, as shown by the findings of fact. No evidence has been adduced as to the rates of depreciation properly ascribable to the various classes of assets.

Whether the category "power" should carry anything more than boilers, engines, pumps, etc., it is impossible for us to determine from the evidence. We are satisfied, however, that there are many items of assets which are not properly to be classed as machinery. We think that the various classifications of pipe and fittings, valued in excess of $118,000 by Coats & Burchard Co. are not properly to be considered as in the same category as machinery, and we are of the opinion that they should not be depreciated at the 10 per cent rate. The 5 per cent rate applied to power should in our opinion cover items connected with the transmission of power. We think that the same holds true with respect to railroad tracks valued at $31,000, cranes and hoists at $35,000, furnaces and forges at $130,000, and numerous other classes of assets. If some or all of these items are not properly to be regarded as power we think it is equally plain that they are not properly to be regarded as machinery. The only purpose of the classification of assets as " power " and " machinery and equipment " is to determine a basis for determining the assets depreciable at a 5 per cent rate and at a 10 per cent rate. The evidence in our opinion proves the substantial correctness of the respondent's allocation.

3. The final point is whether the assessment and collection of deficiencies determined for the years 1917, 1918, and 1919 are barred by statutes of limitations.

It is submitted on behalf of the petitioner that at the time of the filing of the consent dated December 10, 1925, the power of the respondent to assess any deficiency taxes for the years 1917, 1918, and 1919 had expired and that it was only by virtue of a consent that any right to make future assessment can be exercised; that petitioner is bound only by the terms of the waiver so filed which is that the petitioner consents to the extension of the statute of limitations until the 31st day of December, 1926, and no longer, unless in the meantime a notice of a deficiency tax is sent to the petitioner by registered mail and then if no appeal is taken the time for the making of this assessment shall be extended 60 days, or, if an appeal is filed, then the date shall be extended by the number of days between the date of mailing of the notice of deficiency and the date of the final decision of the

486

Board; that no such deficiency letter was mailed after the filing of the consent and that therefore the sole effect of the consent filed was to extend the time for the making of these assessments until December 31, 1926, and no further; that prior to the Act of 1926 the statute of limitations was solely a statute of repose; that it in no manner affected the obligation; that in the Act of 1926 it is provided by section 1106 that the statute of limitations against the United States in respect of any internal revenue tax shall not only operate to bar the remedy but shall extinguish the liability. The petitioner therefore contends that since December 31, 1926, no power has existed in the Commissioner to assess any deficiency tax against the petitioner for any of the years 1917, 1918, and 1919.

If the petitioner had filed no consent for the assessment of deficiencies for the years 1917, 1918, and 1919, the right of the Commissioner to make such assessments would have been barred so far as the year 1917 is concerned on March 29, 1923; for 1918 on June 17, 1924; and for 1919 on May 16, 1925. The deficiency notice was mailed to the petitioner on March 14, 1925, and the petitioner's appeal was filed with this Board on May 6, 1925. Clearly, under the provisions of section 277 (b) of the Revenue Act of 1924, the assessment of any deficiency for the year 1919 is not barred from assessment and collection, since the Commissioner notified the petitioner of a deficiency in tax for 1919 within the five-year period of limitation provided by the Act and the appeal was taken to this Board within such period.

It is to be noted, however, that, where a consent for a later determination of assessment is filed by the petitioner with the Commissioner, the assessment may be made within the period as extended by such consent. The letter of the Commissioner sent to the petitioner on December 7, 1925, over the signature of the Solicitor, states that, " as it is impossible at this time to determine whether the case will be disposed of by the Board prior to the expiration of the period of your waiver," a further consent is requested. The necessary implication from this letter is that the Commissioner was in possession of consents extending the period within which assessments might be made for the years 1917, 1918, and 1919. No witness for the petitioner testified that no such consents had been given and the necessary inference is that such consents had been given. Furthermore, the prompt action of the petitioner in filing a consent under date of December 10, 1925, for the determination of deficiencies for 1917, 1918, and 1919 would imply that such consent had been given. The fact that no such prior consent was offered in evidence by the respondent does not prove that no such timely consent or consents had been given.

But, even if no such consents had been given with respect to deficiencies for the years 1917 and 1918, we are still of the opinion that

the consent filed under date of December 10, 1925, is a substantial compliance with the statute giving the Commissioner until December 31, 1926, within which to determine deficiencies for the years 1917, 1918, and 1919. *Joy Floral Co.*, 7 B. T. A. 800. It is true that the consent of December 10, 1925, states:

This waiver of the time for making any assessment as aforesaid shall remain in effect until December 31, 1926, and shall then expire except that if a notice of a deficiency in tax is sent to said taxpayer by registered mail before said date * * *

and it was stipulated at the hearing that no notice of deficiency for the years 1917, 1918, and 1919, or any of such years, was sent to the petitioner subsequent to December 10, 1925. But a notice of deficiency had been sent to the petitioner on March 14, 1925, and we think, therefore, that the petitioner is bound by the consent filed. A second notice of deficiency after the filing of the consent was unnecessary. We therefore are of the opinion that the assessment and collection of any deficiencies due for the years 1917, 1918, and 1919 are not barred by statutes of limitations.

The deficiencies determined for the years 1917, 1918, and 1919 will be determined in accordance with the decision of the Circuit Court of Appeals, Seventh Circuit, above referred to, and in accordance with this opinion. The value of the steel and iron buildings of the petitioner should be depreciated at the rate of 5 per cent per annum from March 1, 1913, in accordance with the decision of the Circuit Court of Appeals.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

