# H. H. Champlin, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 22486.   Promulgated November 14, 1934.

*Harry O. Glasser, Esq.*, for the petitioner.
*Philip M. Clark, Esq.*, for the respondent.

### SECOND OPINION.

Sternhagen: From the Board's decision in this proceeding, following the opinion of June 6, 1933, 28 B. T. A. 264, the petitioner filed a petition for review. The Board's decision was reversed, April 11, 1934, *Champlin* v. *Commissioner*, 71 Fed. (2d) 23, and the proceeding was remanded " for further proceedings not inconsistent with the opinion of this court." Thereupon the respondent moved for such further proceedings, and more particularly for a consideration and decision upon the issue as to depletion, affirmatively presented in an amended answer filed before the trial. This issue had been raised by the respondent only as an alternative, and as to it the Board, in its earlier opinion, said:

4. The respondent raises an alternative issue as to the depletion allowance if his valuation be overruled. Since the valuation is sustained, there is no occasion to consider this alternative issue, there being no claim for an increase in the deficiency.

The respondent's position now is that, while there was no occasion for him to press for a decision upon this issue so long as his determination as to the fair market value of the petitioner's interest in the Beggs lease and of the Champlin Co. shares which he received in exchange therefor was sustained, this situation has been entirely changed by the opinion and decision of the court, and it now for the first time becomes important that the discovery valuation of the Beggs lease shall be considered as the basis for depletion deductions for the years in question. The petitioner first challenges the power of the Board to give consideration to this issue at this time, arguing

that the doctrine of the law of the case prevents further consideration and requires the entry of a judgment which will embody, (1) the recognition of the partnership, and (2) the exchange of the oil properties for corporate shares having no fair market value.

In our opinion, the petitioner's view can not be sustained. The issue as to whether petitioner has received excessive depletion deductions by reason of an excessive discovery valuation has not been heretofore considered or decided by the Board, and there is nothing in the opinion of the Circuit Court of Appeals which leads us to believe that the court, either expressly or tacitly, disposed of it. If this issue had been before the court, the Board's duty would be clear—it could not intermeddle with the court's disposition of the issue, and its sole function would be to perfect a judgment in complete accord with the law as announced by the court. This would be the law of the case, which would permit of no further consideration by the Board as to the decision that there was a partnership between the petitioner and his wife, and that there was no fair market value of the corporate shares when received by the petitioner in 1920. It is, so far as this Board is concerned, final. We think, however, that the court's opinion and its mandate go no further than to require consistency with the court's opinion in everything that remains to be done in the proceeding. Foster on Federal Practice, vol. 4, sec. 712, tersely says that, pursuant to such a mandate the court of first instance "has plenary authority to allow amendments, consolidation with another case, and further proof, except in so far as the opinion or mandate specifically forbids." *In re Sanford Fork & Tool Co.*, 160 U. S. 247, holds:

When a case has once been decided by this court on appeal, and remanded to the Circuit Court, whatever was before this court, and disposed of by its decree, is considered as finally settled. * * * That court can not * * * intermeddle with it, further than to settle so much as have been remanded * * *. But the Circuit Court may consider and decide any matters left open by the mandate of this Court; * * *

See also *Rio Grande Dam & Irrigation Co.* v. *United States*, 215 U. S. 266; *Northern Pacific Ry.* v. *Concannon*, 239 U. S. 382; *Pierce* v. *United States*, 255 U. S. 398; *Hawkins* v. *Cleveland, O., C. & St. L. Ry. Co.*, 99 Fed. 322; *Collin County National Bank* v. *Hughes*, 155 Fed. 389; *Chicago Railway Equipment Co.*, 13 B. T. A. 471. If *Swenson* v. *Commissioner*, 69 Fed. (2d) 280, has any importance in this connection, it seems to indicate that the Board, acting under the present mandate, must now consider the merits of the reserved question. We take up, then, the petitioner's depletion allowance.

Both parties agree that the record printed for use in the Circuit Court of Appeals contains all of the evidence upon which they rely

and they have no further evidence upon this point. The respondent acknowledges that as the depletion issue was first raised in his amended answer, the burden of proof in respect of that issue is upon him. Briefly stated, his contention is that the petitioner's deductions for depletion in respect of the Beggs lease prior to its transfer in 1920 to the corporation must be based on cost, and that he may not receive a depletion deduction based upon a greater discovery value because his interest at the time of discovery had no fair market value. The statute governing is section 214 (a) (10), Revenue Act of 1918.[1] It requires that " the depletion allowance shall be based upon the fair market value of the property at the date of the discovery or within thirty days thereafter ", and it is upon the determination of such fair market value that the issue turns. Before the deficiency was determined, the Commissioner had allowed depletion, and the facts in respect of this allowance are stipulated by the parties as follows:

(a) That, heretofore, on or about October 23rd, 1926, the Respondent did allow the petitioner, in conformity with the provisions of Section 214 (a) (10) of the Revenue Act of 1918, upon the leasehold property in controversy; Discovery Values for Depletion Allowance upon several oil-producing sands, discovered by petitioner upon said leasehold, which Discovery Values were allowed in each instance as of a period within thirty (30) days after each of said respective discoveries; and as allowed by the Respondent and accepted by the petitioner, together with the number of each discovery well; the dates of such discoveries and the amount of such discovery value for depletion allowance in each instance, being as follows, to-wit:

| | |
|---|---:|
| Well #1, Dec. 23, 1916 | $386, 942. 40 |
| Well #10, Aug. 1, 1917 | 339, 025. 70 |
| Well #14, Apr. 17, 1918 | 476, 521. 99 |
| Well #15, June 21, 1918 | 298, 774. 56 |
| Well #19, Aug. 13, 1918 | 181, 788. 80 |
| Well #22, Dec. 15, 1918 | 343, 493. 85 |
| Well #24, Jan. 15, 1919 | 177, 781. 20 |
| Well #27, Apr. 4, 1919 | 91, 269. 10 |
| Total | $2, 295, 597. 60 |

[1] SEC. 214. (a) That in computing net income there shall be allowed as deductions:
 *       *       *       *       *       *       *

(10) In the case of mines, oil and gas wells, other natural deposits, and timber, a reasonable allowance for depletion and for depreciation of improvements, according to the peculiar conditions in each case, based upon cost including cost of development not otherwise deducted: *Provided*, That in the case of such properties acquired prior to March 1, 1913, the fair market value of the property (or the taxpayer's interest therein) on that date shall be taken in lieu of cost up to that date: *Provided further*, That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. In the case of leases the deductions allowed by this paragraph shall be equitably apportioned between the lessor and lessee.

That the total of said discovery values for depletion allowance as so allowed by the respondent and by the petitioner so accepted is reflected in the total figures $2,295,597.60 and was so allowed by the respondent correctly, accurately and in conformity with the law upon the assumption by the respondent that petitioner was possessed, at the respective discovery dates, or within *thirty* (30) days thereafter, of a merchantable title to said leasehold property; that is the respondent in determining such values did not consider that any title hazard existed.

(b) That respondent, in computing the net income of petitioner for the years 1918, 1919 and 1920, did allow and petitioner did accept, depletion for the year 1918 in the amount of $266,275.74, for the year 1919, in the amount of $369,-809.26, and for the period of January 1st, 1920, to March 31st, 1920, in the amount of $67,841.89, a total of $703,926.89.

That of the foregoing allowance, a total sum of $3,683.14 was allowed as depletion upon the cost of the lease, and the balance of said allowances so made by the respondent and accepted by the petitioner, in the net sum of $700,243.75, is attributed to and was allowed as depletion upon the discovery values, as hereinbefore set forth;

(c) That the respondent, on October 23, 1926, did correctly determine the fair market value of a merchantable title to the Beggs Lease as of April 1, 1920— upon which discovery values for depletion allowance had been made, as hereinbefore more fully set forth—to be $1,530,000.00;

(d) That after determining said fair market value, the respondent applied a deduction of 25% thereon for the purpose of absorbing a title hazard in the petitioner by reason of litigation upon said leasehold, evidenced in the record in this cause by exhibits identified as a part of the direct testimony in the deposition of the witness H. G. McKeever, which deduction when so applied reduced the respondent's determination of fair market value of merchantable title to said lease to the figures $1,147,500.00, which amount as so determined was used by the respondent for the calculation of an alleged profit of $869,198.05 to the taxpayer in the conversion of petitioner's title thereto into organization stock in the Champlin Refining Company, which action upon the respondent's part, in so calculating such alleged profit, constitutes one of the principal controversies in this action;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(f) That for the organization of the Champlin Refining Company, the petitioner did convey to said corporation record title to the Beggs leasehold, described as the S. W. ¼ of Sec. 24, Twp. 22, North, Range 4 W. I. M., Garfield County, Oklahoma, by assignment thereof as of April 18th, 1920, together with the conveyance of like date of all record right, title and interest in the refining and marketing business owned by H. H. Champlin, or by H. H. Champlin and A. D. N. Champlin, his wife, as the evidence may so warrant and this Honorable Board may find;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(h) That in determining the "net profit on sale of lease" in the alleged sum of $869,198.05 (page 40, Petition) now in controversy in this action, the respondent found the "fair market value" of said lease as of April 1, 1920, in the manner set forth in paragraphs (c) and (d) herein to be_ $1,147,500.00 from which he deducted:

| | |
|---|---|
| Depreciated cost of casing and pipe_____ | $194, 205. 20 |
| Depleted cost of Lease_____ | 6, 578. 27 |
| Depreciated value of buildings_____ | 8, 196. 63 |
| Depreciated value of tanks_____ | 28, 721. 85 |
| Rigs, Machinery and boilers, etc_____ | 40, 600. 00 |

278, 301. 95

resulting in the alleged profit of_____ $869, 198. 05

upon which sum, so computed, the respondent seeks to require the petitioner to pay income tax calculated in the manner provided by the laws of the United States then in force and effect, and it is agreed that the respective items so deducted are correctly valued for such deduction, if such computation be warranted in the law;

(i) That whatever hazard was existent in the title of H. H. Champlin (or H. H. Champlin and A. D. N. Champlin, as the evidence may warrant and this Honorable Board may find) upon the Beggs Lease, as of April 17th, 1920, such hazard in title has been constant from the 30th day of August, 1916, the date of the acquisition of said lease by the said H. H. Champlin, and that suit to quiet title thereto was instituted by petitioner on November 4th, 1916, as evidenced by Exhibits identified as a part of the testimony in the deposition of the witness H. G. McKeever;

\*        \*        \*        \*        \*        \*        \*

The issue arises from the alleged inconsistency between an assumed fair market value of the Beggs lease as the basis for discovery depletion and its lack of fair market value as decided by the court. The Government argues that since both the fair market value of the shares of the corporation for the purpose of section 202, Revenue Act of 1918, and the basis for depletion for the purpose of section 214 (a) (10) of the same statute are determinable from the fair market value of the Beggs lease, and since it has been decided that the lease was without fair market value upon evidence which shows a constancy of condition from November 4, 1916, until the transfer to the corporation in 1920, there can be no statutory basis for discovery depletion. The depletion allowance would thus be based upon the petitioner's cost, which is stipulated at $12,000.

The evidence of the fair market value of the Beggs lease within thirty days after discovery is found in the testimony of the same witnesses as testified as to such fair market value in 1920. It is uniformly to the effect that the title hazard, which existed in 1916 before the discovery of the first well and continued throughout the litigation, impaired the marketability of the petitioner's interest in the lease at all times, and that the lease was without fair market value constantly during the period of litigation. Although the parties have stipulated the fair market value of a " merchantable title " to " the Beggs lease ", " the leasehold property ", or " the lease ", the evidence shows that this does not reflect the fair market value of the litigated interest owned by petitioner, but that petitioner's

"top lease" was not salable during the pendency of the litigation. If, therefore, a definitive finding of fact must now be made, we find that the Beggs lease and the petitioner's interest therein were without fair market value at the stipulated dates of discovery or within thirty days thereafter. We are, however, in doubt, from the opinion of the court, whether such a determination is to be treated as one of fact or of law. If it is to be treated as a legal inference, the application to the evidence of the legal concept of fair market value which we are required by the court's opinion to use, leads to the same conclusion. In other words, the law of this case is that a property interest which can not be sold at a "fair" price or at a price fairly approximating the figure which it would bring if it were marketable has no fair market value; and the evidence clearly fulfills the concept.

It is argued for petitioner that this view will frustrate the intendment of the allowance for discovery depletion, which it is said is an allowance *in rem*, measured by the value of the well, and granted to encourage exploration. The Board must, of course, take the law as it finds it, applying the statutory language as judicially interpreted. It is only when the language lacks clarity and there has been no authoritative interpretation that we seek for a purpose which will enlighten our understanding of the statutory law.

The statute (sec. 214 (a) (10)) expressly provides that the depletion allowance in case of discovery is to be based on "the fair market value of the property", *H. O. Miller*, 10 B. T. A. 450; *Dunn & Baker, Inc.*, 30 B. T. A. 663, and then only when such fair market value is materially disproportionate to the cost, *H. E. and M. C. Sadler*, 4 B. T. A. 1014. These words we must follow. We may not ignore or modify the words "fair market value" because their judicial meaning now gives a particular taxpayer something different from what he thought he was entitled to under an incorrect meaning of the statutory term. The fact that the special method of measuring the deduction was granted, together with a special rate of tax on gains (sec. 211 (b)), as a stimulant for prospecting and exploration (Senate Finance Committee Report, Revenue Bill of 1918, Rept. No. 617, 65th Cong., 3d sess., pages 6 & 8),[2] does not authorize a distortion of

---

[2] GAINS DERIVED FROM PROSPECTING, EXPLORATION, OR DISCOVERY.

The prospector for mines or oil and gas frequently expends many years and much money in fruitless search. When he does locate a productive property and comes to settle it seems unwise and unfair that his profit be taxed at the maximum rate as if it were ordinary income attributable to the normal activities of a single year. To stimulate prospecting and exploration, the committee has limited the surtax to 20 percent of the selling price in the case of a bona fide sale of mines, oil or gas wells where the principal value was demonstrated by prospecting, exploring, or discovery work done by the taxpayer (sec. 211b, p. 18). A similar limitation has been imposed by the war excess-profits tax applicable to gains derived by a corporation from the bona fide sale of such mines, oil or gas wells (sec. 337, p. 107). Special provision is also made for increased

the language used in the law. Indeed, its recognition as a special provision for a special purpose would limit its use to situations clearly within its terms.

The fact that the statutory fair market value to be used is of the *property* neither requires nor permits a basis for the deduction which is greater than the particular taxpayer's interest. The function of the deduction is to preserve the taxpayer's interest immune from tax before taxing his gain or profit. He may not preserve more than he has. It is the fair market value of his interest not only at the time of his investment but also at the time of discovery or within thirty days thereafter that shall be preserved to him by means of the depletion deduction, *J. S. J. Lyell*, 29 B. T. A. 133. Whatever his interest may be, it constitutes his depletable property and as, in *Lynch* v. *Alworth Stevens Co.*, 267 U. S. 364, his depletion shall not be based on less, we think it may likewise not be based on more. See *Palmer* v. *Bender*, 287 U. S. 551; *Pugh* v. *Commissioner*, 49 Fed. (2d) 76; *Commissioner* v. *Molter*, 60 Fed. (2d) 498; *San Martinez Oil Co.*, 25 B. T. A. 218; *Ed Peterson*, 25 B. T. A. 1364, 1369. The fact that Congress expanded the base by using a discovery value in lieu of an actual cost gives no warrant for a base essentially different from the taxpayer's property interest. *Palmer* v. *Bender, supra; Pugh* v. *Commissioner, supra.* It has been consistently held that each interested taxpayer may have depletion according to his property interest. *Palmer* v. *Bender, supra.* While this has usually arisen only in measuring the *quantum* of each taxpayer's property in the whole, it is, we think, equally true that other factors may serve to measure the depletion besides. If the share is so affected by imponderables that its value is negligible, the depletion deduction of such taxpayer should not be based upon more than the fair market value of what he has, his economic interest. Otherwise every oil well would carry an impersonal aggregate annual depletion deduction applicable to some one or more taxpayers by a method of mathematical division. Congress, however, has said as to depletion, as it has as to depreciation, that each taxpayer shall measure his depletion not with regard to the whole, but with regard to his own prop-

depletion allowance in the case of such properties (sec. 214 (10), p. 28; and sec. 234 (9), p. 58).

DEPLETION

For the purpose of depletion allowance in the case of properties acquired prior to March 1, 1913, the provision of the present law, omitted in the House bill, has been restored by the committee, so that in the case of such properties the basis for the depletion allowance shall be the March 1, 1913, valuation; but a proviso has been added that where mines or oil and gas wells have been discovered by the taxpayer on or after March 1, 1913, and not acquired as a result of the purchase of a proven tract or lease, and where the fair market value is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of discovery or within 12 months thereafter (sec. 214a 10, and sec. 234a, 9).

erty. *United States* v. *Ludey*, 274 U. S. 295. The only exception is that expressly provided in the last sentence of the subdivision for an equitable apportionment between lessor and lessee; and that is not here in question. It may not, however, be ignored that petitioner's interest is in the lease and not in the fee. Furthermore, the deduction for discovery depletion is only available to the discoverer, *Melville G. Thompson*, 10 B. T. A. 25, and lapses when the discoverer transfers his interest, *Darby-Lynde Co.*, 51 Fed. (2d) 32.

Petitioner urges that because he is taxed on the income from the lease he is entitled to the deduction for its depletion. But these are controlled by the statute and do not depend on each other. The petitioner received the income under a claim of right and is therefore taxed upon it, *Burnet* v. *North American Oil Consolidated*, 286 U. S. 417. His deduction is, however, limited to the statutory allowance, *Burnet* v. *Thompson Oil & Gas Co.*, 283 U. S. 301; *Darby-Lynde Co.* v. *Commissioner*, *supra*, which is measured, not by his taxable income from the lease (as in the 1926 Act and later acts), but by the fair market value of his capital property in the discovery period. There is no such relation between the depletion deduction and the income from production as there is in the statute itself between fair market value as a base for depletion and fair market value as a base for determining gain or loss from sale or exchange. *Darby-Lynde Co.* v. *Commissioner*, *supra*.

Since the fair market value of the petitioner's property in the Beggs lease during the years before us must be taken as *nil*, there is no discovery basis for any deduction for depletion, and the basis to be used is, therefore, the cost to the petitioner. As to this, the parties are not in dispute.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*